IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 07-165-1 & 2 |
| | : | |
| TRAMELL BLEDSOE | : | |
| PHILIP SAINSBURY | : | |
| | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                          **August 28, 2008**

Defendants Tramell Bledsoe, Philip Sainsbury and Joshua Burton are charged in a nine-count superceding indictment, with armed bank robbery in violation of 18 U.S.C. § 371 (one count each against Bledsoe and Sainsbury), armed bank robbery in violation of 18 U.S.C. § 2113(d) (three counts as to Bledsoe and two counts as to Sainsbury),[1] using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1) (three counts as to Bledsoe and two counts as to Sainsbury), being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (one count as to Bledsoe), and acting as an accessory after the fact in violation of 18 U.S.C. § 3 (one count against Burton).

Before me are the following pretrial motions: (1) defendant Bledsoe's motion to suppress physical evidence and request for a Franks hearing (Document #96); (2)

---

[1] Count Two has been severed per Order of May 22, 2008 (Document #152).

defendant Bledsoe's motion to suppress physical evidence (Document #71);[2] (3) defendant Sainsbury's counseled motion to suppress (Document #75); and (4) defendant Sainsbury's *pro se* motion to suppress (Document #145).  The government has responded, and two pretrial evidentiary hearings afforded all parties substantial opportunity to present evidence and to argue the merits of the pending suppression motions.  Based on my review of the parties' submissions and the evidence taken during the hearings held on defendants' suppression motions, and for the reasons outlined herein, I will deny defendants' motions to suppress.

## I.    BACKGROUND

This case arises out of three separate bank robberies that occurred at different locations and on different dates.  The first bank robbery occurred on or about August 17, 2004, at the Fleet Bank in Bethlehem, Pennsylvania ("Fleet Bank robbery").  Only Tramell Bledsoe is charged in connection with this robbery.  He is charged with armed bank robbery and using and carrying a firearm during a crime of violence in connection with that incident.  The second bank robbery occurred on or about December 13, 2005, at the First Commonwealth Federal Credit Union in Palmer Township, Pennsylvania ("First Commonwealth robbery").  Both Tramell Bledsoe and Philip Sainsbury are charged with conspiracy to commit armed bank robbery, armed bank robbery, and using and carrying a firearm during a crime of violence in connection with the second robbery.  The third bank

---

[2]Following two days of hearings on pretrial motions, defendant Bledsoe filed a Supplemental Response in Support of Motion to Suppress Physical Evidence (Document #141).

robbery took place on or about December 21, 2006, at the Lafayette Ambassador Bank in Emmaus, Pennsylvania ("Lafayette Bank robbery").  In connection with this robbery, Tramell Bledsoe and Philip Sainsbury are charged with armed bank robbery and using and carrying a firearm during a crime of violence.  Mr. Bledsoe is also charged under the felon-in-possession statute in connection with the Lafayette Bank incident.  The grand jury also found that on or about December 22, 2006 through December 24, 2006, Joshua Burton received, relieved, comforted and assisted Tramell Bledsoe in order to hinder and prevent his apprehension, trial and punishment, charging him as an accessory after the fact with respect to the Lafayette Bank robbery.

A.     First Commonwealth Federal Credit Union

On December 13, 2005, the day of the First Commonwealth robbery, postal officer Joseph Kostolanci, Jr., traveling in a United States Postal truck observed two people leaving the First Commonwealth Federal Credit Union.  He followed them, and observed them getting into a black Jeep Cherokee, with license plate PA #GBG5623.  The vehicle was registered to Stephanie A. Cooper, who police learned had moved to an Allentown address.  Officer Heicklen of the Allentown Police Department observed the vehicle later that day, traveling in the area near Ms. Cooper's Allentown residence.  Police stopped the car and brought the driver, Jamie Cooper, to the station to be interviewed.

Mr. Cooper stated that on December 12, 2005, "Moses" called him to ask for use of the Jeep, Mr. Cooper picked up "Moses" at 2nd and Chew Streets in Allentown, and

"Moses" dropped Mr. Cooper off at his residence, taking the Jeep. On December 13, 2005, "Moses" called Jamie Cooper and told him he had parked the Jeep at Haufbrau Haus, near Cooper's home. Mr. Cooper found the items in the back seat moved, indicating to him that other passengers had been in the vehicle with "Moses." Mr. Cooper also stated that "Moses" had used the Jeep several times during the preceding months. Cooper later identified Philip Sainsbury in a photo array as the person he called "Moses."

On December 14, 2005, Sgt. Timothy Ruoff of the Palmer Township Police obtained a search warrant for the search of the Jeep identified by Mr. Kostolanci as the getaway vehicle. The following items were seized: a brown stocking, a pack of Marlboro light cigarettes, a McDonald's bag, a plastic water bottle, a PA turnpike receipt, a Bell South phone, and fingerprints from the front and rear seats and rearview mirror.

Officer Ruoff also obtained a search warrant for 314 ½ North Second Street, Allentown, Pennsylvania, the residence said to be occupied by defendant Philip Sainsbury, a/k/a "Moses." Items found and seized during the search were U.S. currency, a tan colored cash box, money wrappers, black gloves, black hoods, black masks, footwear, black duffel bags and firearms, including a small black handgun and a small silver handgun.

Officer Ruoff obtained a third search warrant to gather a DNA sample from Sainsbury, to determine if his DNA matched material found on the stocking recovered

from the Jeep.

Defendant Sainsbury has moved to suppress evidence obtained pursuant to the three search warrants, as well as the identification by Mr. Kostolanci.

B.     Lafayette Bank

On December 21, 2006, the day of the Lafayette Bank robbery, Officer Jeremy Schilling of the Emmaus Police was patrolling an area near the Lafayette Ambassador Bank.  In the government's version of the facts, Officer Schilling witnessed a black Audi fail to stop at a stop sign.  Mr. Bledsoe does not mention this traffic violation in his motion, arguing that Officer Schilling only became suspicious of the Audi when he noticed its three African American passengers and that the rear-seat passenger looked away from Officer Schilling "quickly."

Officer Schilling then checked the registration of the Audi's license plate and discovered that it was registered to a Lexus.  At that point, Officer Schilling conducted a traffic stop of the Audi.  The rear-seat passenger, later identified as Mr. Bledsoe, exited the vehicle and began to leave the scene of the stop.  Officer Schilling chased him on foot.  Schilling radioed for help with the foot pursuit, and police eventually overtook Bledsoe, discovering a firearm and wads of paper bills wrapped in bank wrappers on his person.

Mr. Bledsoe challenges Officer Schilling's initial stop of the Audi, as well as the foot pursuit and his eventual arrest once the officers subdued him.  After his arrest, s

search warrant was obtained for the Audi, based in part on Officer Schilling's determination that the Audi's license plate was registered to a "dead tag." The search revealed two parking tickets and vehicle information paperwork, among other items. Mr. Bledsoe also seeks to suppress the items found in the Audi as fruits of an illegal search. He contends that the search warrant was invalid, because the warrant was based on the dead registration tags, when Officer Schilling knew that the tags were not actually dead.

**II.   DISCUSSION**

A.   Defendant Sainsbury's Motion to Suppress Physical Evidence and Identification[3]

Defendant Sainsbury argues that the informant used to obtain the subject search warrants, Jamie Cooper, had a motive to fabricate and was therefore not reliable. According to defendant, Mr. Cooper, whose car was involved in the robbery, has "every motive in the world to fabricate information in order to avoid his possible involvement." Therefore, the magistrate issuing the search warrant did not have a substantial basis for a finding of probable cause. United States v. Williams, 124 F.3d 411 (3d Cir. 1997).

With regard to the search of the Jeep, Sainsbury has no legitimate expectation of privacy in a vehicle owned by another person, which he was not even occupying at the time of the search. Minnesota v. Carter, 525 U.S. 83, 88 (1998); United States v. Baker, 221 F.3d 438, 442 (3d Cir. 2000) (non-owner of a vehicle typically has no standing, even when search conducted at time defendant was a passenger).

---

[3] As Mr. Sainsbury's *pro se* motion (Document #145) duplicates the arguments already raised by his counsel's motion (Document #75), I will resolve both motions together here.

The government also defends the three challenged search warrants under the good faith exception, United States v. Leon, 468 U.S. 897 (1984); United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001), and based on the "ample" probable cause supporting the warrant. After considering the testimony presented at the suppression hearing, I find that probable cause existed at the time the challenged search warrants issued. See Illinois v. Gates, 462 U.S. 213, 238 (1983); United States v. Shecter, 717 F.2d 864, 869 (3d Cir. 1983). The magistrate could rely not only upon the statements of Mr. Cooper after the police found him driving the Jeep, but also on the independent information provided by the victims of the robbery, the postal worker who identified the Jeep as the getaway car, and the circumstances under which the police located the Jeep. These facts, particularly Mr. Kostolanci's independent observations at the scene of the robbery, also sufficiently corroborated Mr. Cooper's statements regarding "Moses," such that a reasonable officer could rely on the validity of the warrant, satisfying the test for application of the good faith exception. See Leon, 468 U.S. at 923; United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents, 307 F.3d 137, 146 (3d Cir. 2002).

Sainsbury also seeks suppression of any identification by postal worker Joseph Kostolanci. The government responds that there was no identification made, and that the motion is moot as to the identification evidence. Defendant agrees that this information renders the motion moot, and I will therefore deny it as such.

Accordingly, I will deny defendant Sainsbury's motions in their entirety.

B.   Defendant Bledsoe's Motion to Suppress Physical Evidence and Request for a
     *Franks* Hearing

Mr. Bledsoe has moved to suppress all physical evidence seized from the Audi and has requested a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). Such a hearing is required when the defendant has made a substantial preliminary showing that probable cause for a search warrant was created through statements made in the warrant affidavit that were either knowingly false or made with reckless disregard for the truth, if probable cause would not have existed without such statements. Id. at 155.

Defendant is only entitled to a Franks hearing if he "makes a substantial preliminary showing that (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit, and (2) the allegedly false statement was necessary to the finding of probable cause in order to obtain an evidentiary hearing on the issue of the affidavit's veracity." United States v. Harrison, 400 F. Supp. 2d 780, 785 (E.D. Pa. 2005) (Padova, J.) (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)). "In order to make a preliminary showing with respect to the first prong of the Franks test, a defendant must challenge the affiant's state of mind as well as the truth of the affidavit." Id. citing United States v. Brown, 3 F.3d 673, 676-78 (3d Cir. 1993). As for the second prong of the Franks test, if probable cause exists even with the factual error (mistake regarding whether the tags were "dead"), there is no Franks hearing. United States v. Santana, 342 F.3d 60, 66 (1st Cir. 2003).

After the stop and the foot pursuit, a search warrant was obtained for the Audi by

8

Detective Jason Apgar.  Upon information and belief, Mr. Bledsoe challenges the truth of the affidavit of probable cause, because the officer knew or should have known that the tags were not "dead" and that there was no probable cause for the stop.  Without probable cause for the stop, the affidavit of probable cause must be knowingly false, according to Mr. Bledsoe.  Mr. Bledsoe's argument therefore hinges on the idea that the "dead tag" was the only basis Officer Schilling had for stopping the car, and that the traffic stop was the basis of the search warrant.  Because the tags were validly transferred from a Lexus to the Audi, Mr. Bledsoe argues that Officer Schilling lied in the warrant affidavit regarding his reason for stopping the Audi, and that he is therefore entitled to a Franks hearing.  The government disputes this version of the facts.  Even if true, however, Mr. Bledsoe would not be entitled to a Franks hearing, because other evidence existed sufficient to form probable cause for a search warrant even without the statement regarding the tags.

     Officer Schilling testified that he stopped the Audi based on its failure to stop at a stop sign.  Only after this traffic violation and the observation that the rear-seat passenger looked at him in a nervous manner did Officer Schilling run registration on the license plate and determine that the plate was issued to a Lexus rather than an Audi. (See Prelim. Hr'g N.T., May 1, 2008, 96:14-97:16.)  A traffic violation is all the cause that is needed to make a valid traffic stop.  Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977).  Regardless of the registration, therefore, the stop of the Audi was valid.

     Following the stop of the Audi, Mr. Bledsoe fled from the automobile on foot.

While Officer Schilling and other officers chased him, they received the message that an armed bank robbery had taken place moments earlier in the same vicinity. After overcoming Mr. Bledsoe, the officers recovered over $6,000 in cash from his pockets, wrapped in bank wrappers. Officers also recovered a sweatshirt that Mr. Bledsoe discarded during the chase that was shown on the video surveillance of the robbery. These facts provide sufficient probable cause on which to issue a search warrant for the vehicle. Mr. Bledsoe's motion rests solely on the issue of the car's registration. If probable cause exists even without the factual error, however, no Franks hearing is necessary. United States v. Santana, 342 F.3d 60, 66 (1st Cir. 2003). Even if Officer Schilling knowingly or recklessly included false information regarding his belief that the Audi's tags to be "dead," sufficient probable cause existed to connect Mr. Bledsoe and the other occupants of the car with the robbery that a search warrant could be obtained for the vehicle. It is far more likely that Officer Schilling relied in good faith on the registration information and concluded that there was a problem with the Audi's tags. The fact that further investigation might have revealed that the Audi's tags had been transferred from the Lexus does not mean that his decision, made while following the Audi, to stop the Audi and investigate the tags and the traffic violation was unreasonable.

For these reasons, Mr. Bledsoe's motion to suppress evidence obtained in the vehicle search and request for a Franks hearing is denied.

C.       Defendant Bledsoe's Motion to Suppress Based on Illegal Stop and Lack of Probable Cause to Arrest

Defendant Bledsoe challenges both the initial stop of the black Audi in which he was a passenger on December 21, 2006, and his subsequent arrest after fleeing the scene of the stop.

    1.    *Initial stop by Officer Schilling*

As I noted in the context of Mr. Bledsoe's Franks motion, Officer Schilling testified that he observed the Audi roll through a stop sign. Three black males were in the car, and the back seat passenger repeatedly turned around and looked at the officer in a nervous manner. Officer Schilling followed the vehicle. He ran the tag number in his vehicle computer, and the tag came back as an expired tag for a Lexus. Officer Schilling then initiated the stop. (See, e.g., Prelim. Hr'g N.T., May 1, 2008, 96:14-97:16.)

Under Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977) a police officer who observes a violation of state traffic laws may lawfully stop the car committing the violation. See also United States v. Kithcart, 218 F.3d 213, 219 (3d Cir. 2000) ("The reasoning of Terry has been extended to traffic stops.")

Given both the traffic violation and the fact that the vehicle carried "dead tags," Officer Schilling had reasonable suspicion under Mimms to effectuate the stop.

    2.    *Probable cause to arrest*

Following the stop, the driver and Bledsoe (the back seat passenger) exited the Audi and began to walk away from the car, ignoring Officer Schilling's order to stop. At

the time of the stop Officer Schilling had no information about the bank robbery. Schilling called in his foot pursuit and this call was overheard by Officer Baccari, the initial arresting officer who tackled and subdued Bledsoe. Officer Schilling described the suspect as a black male wearing a grey, hooded sweatshirt. Officer Baccari began pursuing Bledsoe based on this description, though Bledsoe had a black t-shirt on at this point. Shortly after leaving the station, Officer Baccari had also received the bank alarm (providing no physical description of the suspects), which he thought was somehow related to the foot pursuit (See Prelim. Hr'g N.T., May 1, 2008, 170:21-171:20 ("[M]y first thought is that this could possibly be one and the same. The location of the stop, the situation that was going on with the stop, and the fact that its in real close proximity to a holdup alarm").) Lafayette Bank (at least the one Officer Baccari was thinking of) was within four (4) blocks of the stop, according to his testimony. (See id. 171:6-7.)

Considering the testimony of Officers Schilling and Baccari, I find that substantial evidence existed at the time of Mr. Bledsoe's arrest, permitting a finding of probable cause. While Mr. Bledsoe protests Officer Schilling's initial pursuit, flight is one of the totality of circumstances that must be taken into account in an examination of probable cause. Illinois v. Wardlow, 528 U.S. 119, 125 (2000). "During a traffic stop, police officers may exercise reasonable superintendence over the vehicle, its driver, and passengers. Because the passenger prevented the police from maintaining oversight and control over the traffic stop by fleeing, . . . the police had reasonable suspicion to stop

him." United States v. Bonner, 363 F.3d 213, 215 (3d Cir. 2004).

Bledsoe also argues that he did not match the description given by Officer Schilling, because he had on a black t-shirt and not a grey sweatshirt. His position glosses the fact that he was likely the only person fleeing through the car lots that afternoon. I see no merit in this line of argument in view of the totality of the circumstances, including the unusual occurrence of these events within minutes of each other in the small town of Emmaus.

The foot pursuit was warranted under Bonner, and the arrest was supported by sufficient probable cause to satisfy the Fourth Amendment. I will therefore deny defendant Bledsoe's motion.

### III. CONCLUSION

In light of the foregoing, I will deny the suppression motions discussed herein. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 07-165 |
| | : | |
| TRAMELL BLEDSOE and PHILIP SAINSBURY | : | |

**O R D E R**

**STENGEL, J.**

**AND NOW**, this 28th day of August, 2008, upon consideration of defendant Bledsoe's Motion to Suppress Physical Evidence (Document #71); defendant Bledsoe's Supplemental Response in Support of Motion to Suppress Physical Evidence (Document #141); defendant Bledsoe's Motion to Suppress Physical Evidence and Request for a <u>Franks</u> Hearing (Document #96); defendant Sainsbury's counseled Motion to Suppress Identification as well as Physical Evidence (Document #75); and defendant Sainsbury's *pro se* Motion to Suppress (Document #145), and after a preliminary hearing on the defendants' motions, it is hereby **ORDERED** that:

(1)   Defendant Bledsoe's Motion to Suppress Physical Evidence (Document #71) is **DENIED**.

(2)   Defendant Bledsoe's Motion to Suppress Physical Evidence and Request for a <u>Franks</u> Hearing (Document #96) is **DENIED**.

(3)   Defendant Sainsbury's counseled Motion to Suppress Identification as well

        as Physical Evidence (Document #75) is **DENIED**.

(4)    Defendant Sainsbury's *pro se* Motion to Suppress (Document #145) is

        **DENIED**.

                                            BY THE COURT:

                                            /s/ Lawrence F. Stengel
                                            LAWRENCE F. STENGEL, J.