IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 07-165 |
| | : | |
| TRAMELL BLEDSOE, | : | |
| PHILIP SAINSBURY, and | : | |
| JOSHUA BURTON | : | |
| | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                 **February 9, 2009**

**I. INTRODUCTION**

Philip Sainsbury filed a motion to suppress asking to have letters seized from his residence excluded from his trial because they were not described in the search warrant. After hearing arguments and testimony at a suppression hearing on February 2, 2009, and upon consideration of defendant's motion as well as the government's response thereto, I will deny Mr. Sainsbury's motion.

**II. FACTS**

On December 13, 2005 two masked gunmen robbed the First Commonwealth Credit Union in Palmer Township, Pennsylvania. According to a teller who was present, during the robbery one of the gunmen referred to the other as "Moses."

A postal worker observed two gunmen flee the credit union shortly after the robbery and enter a black Jeep vehicle. The postal worker gave the Jeep's license plate

1

number to Palmer Township police who located the vehicle's owner that day. The owner stated that he had loaned his vehicle to a man known to him only as "Moses." The owner later identified - in a photo line-up - defendant Sainsbury as the "Moses" to whom he had loaned his Jeep on the day of the robbery.

In the early morning hours of December 14, 2005, Palmer Township police executed a search warrant for Mr. Sainsbury's home on North Second Street in Allentown. The police officers were authorized to search for evidence of the credit union robbery, including United States currency, among other things. The warrant did not specifically list letters or correspondence.

The police seized several letters from a bedroom closet, some of which were loose and some of which were in envelopes. The envelopes all bore a pre-printed return address from Lehigh County Prison, as well as the handwritten words "Philip Sainsbury." While searching for cash and money wrappers, police officers noticed that many of the letters and envelopes had "Moses" and "Philip 'Moses' Sainsbury" handwritten on them. The officers knew (from at least two witnesses) that one of the gunmen was known as "Moses" and seized the letters as evidence of one robber's identity.

**III. DISCUSSION**

At the suppression hearing on February 2, 2009, Sergeant Timothy Ruoff testified that when he executed the search warrant at 314 1/2 North Second Street, just hours after the credit union robbery, a man who went by the name "Moses" was a suspect. Sergeant

Ruoff suspected "Moses" for at least two reasons.  First, shortly after the robbery, the teller at the credit union provided a written statement and confirmed that she had heard one of the robbers call his cohort "Moses" during the robbery.  Second, the owner of the get-away vehicle told Sergeant Ruoff that he had loaned his Jeep to a man known to him only as "Moses."

Defendant Sainsbury does not dispute that the correspondence seized from 314 1/2 North Second Street is incriminating. The correspondence shows that he went by the name "Moses." Nor does Sainsbury dispute that it was in plain view of the officers searching those premises.  He does not suggest that the warrant was anything other than valid.  Sainsbury contends that the officers should have obtained a separate warrant for the letters because the warrant issued to them did not list the letters as items to be seized.

The warrant did authorize the officers to seize small paper items, including money and money wrappers.  The officers lawfully examined papers in the closet that included the correspondence bearing the names "Moses" and "Philip Sainsbury."  The officers discovered the correspondence in a place they were authorized to search.  The letters showing the words "Moses" and "Philip Sainsbury" were in plain view of the officers. The incriminating nature of the letters was immediately apparent. United States v. Scarfo, 685 F.2d 842, 845 (3d Cir. 1983) (holding that incriminating evidence falls under the "plain view" exception to the warrant requirement when law enforcement officers were lawfully on premises, discovery was inadvertent and the incriminating nature of the

item was immediately apparent). Even if the incriminating evidence pertained to another crime, the police officers would have been justified in seizing it. Horton v. California, 496 U.S. 128 (1990). The officers were not required to obtain a separate warrant; the incriminating evidence was in plain view during a valid search.

The police well knew that a paper or letters in an envelope with the name "Moses" was significant. The name "Moses" was linked to one of the robbery suspects immediately after the robbery by three witnesses: the teller and the postal worker (via the license plate identification) and the testimony of the owner of the get-away vehicle. In Scarfo, the matching (original) telephone list that was recovered did not link the suspect to the drawer until *after* the evidence was seized. The police in that case had no reason to suspect that the papers seized would tie the suspect to the crime. In this case, the officer (Sergeant Ruoff) who seized the letters had reliable information linking a man called "Moses" to the robbery.

In Horton, the Supreme Court has addressed the issue of non-contraband evidence not covered by a warrant, but that is both incriminating and in plain view. There, the items - including weapons and handguns - were seized from the petitioner's home during a lawful search authorized by a valid warrant. Id. at 130-31. The warrant permitted the officer to search for stolen property including jewelry and cash, not weapons. The officer stated, however, that it was immediately apparent to him that the weapons and handguns were incriminating (weapons had been used in the crime), even though the warrant did

not explicitly describe weapons or handguns and only authorized seizure of the robbery's "proceeds." Id. at 142. The weapons in Horton were not known to have been involved in the crime at issue. Neither are guns automatically "contraband." Nevertheless, the Supreme Court held that the weapons were validly seized under the "plain view" doctrine. Id.

In this case, the search warrant authorized the officers to search for the fruits of and tools used in the robbery. Observations from the eyewitnesses led Sergeant Ruoff to the reasonable belief that one of the robbers was named "Moses." Because Sergeant Ruoff lawfully seized the incriminating correspondence which was in plain view, that correspondence will not be excluded.

### IV. CONCLUSION

For the foregoing reasons, defendant Sainsbury's motion is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| | : | |
| v. | : | NO. 07-165 |
| | : | |
| TRAMELL BLEDSOE, | : | |
| PHILIP SAINSBURY, and | : | |
| JOSHUA BURTON | : | |
| | : | |

**O R D E R**

**AND NOW**, this 9th day of February, 2009, upon consideration of Defendant Sainsbury's Motion to Suppress Physical Evidence (Letters) (Document #211), it is hereby **ORDERED** that the motion is **DENIED**.

BY THE COURT:


 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.