UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

—————————————————————

TRAMELL BLEDSOE                        :
            Petitioner,          :
                              :      No. 2:07-cr-00165
                              :      No. 2:19-cv-04151
            v.                    :
                              :
UNITED STATES OF AMERICA,              :
            Respondent.          :

—————————————————————

PHILIP SAINSBURY,                      :
            Petitioner,          :
                              :      No. 2:07-cr-00165
                              :      No. 2:13-cv-02495
            v.                    :      No. 2:16-cv-03333
                              :
UNITED STATES OF AMERICA,              :
            Respondent.          :

—————————————————————

**O P I N I O N**

**Tramell Bledsoe's Motion to Vacate Sentence under 28 U.S.C. § 2255 and Related Filings,
ECF Nos. 363, 381, 383, 395 — Denied & Dismissed
Philip Sainsbury's Motion to Vacate Sentence under 28 U.S.C. § 2255 and Related Filings,
ECF Nos. 336, 362, 375, 394 — Denied & Dismissed**

**Joseph F. Leeson, Jr.**                                         **July 6, 2020**
**United States District Judge**

## I.   INTRODUCTION

On February 26, 2009, a jury sitting in the United States District Court for the Eastern

District of Pennsylvania found Tramell Bledsoe and Philip Sainsbury (collectively,

"Petitioners")[1] guilty of (1) conspiracy to commit armed bank robbery, in violation of 18 U.S.C.

---

[1]    The Court uses "petition" and "motion" interchangeably in referring to Bledsoe's and
Sainsbury's applications pursuant to 28 U.S.C. § 2255, and refers to Bledsoe and Sainsbury as
"Petitioners" notwithstanding that applications for relief under § 2255 are titled "motions."

§ 371; (2) two counts of armed bank robbery, in violation of 18 U.S.C. § 2113(d); and, (3) two counts of using or carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1).[2]  Petitioners' charges and convictions arose out of two bank robberies, committed in December 2005 and December 2006, respectively.  As a result of their convictions, Bledsoe was sentenced to an aggregate sentence of 492 months imprisonment, and Sainsbury was sentenced to an aggregate term of 396 months imprisonment.  Petitioners' convictions were subsequently upheld by the Third Circuit Court of Appeals.

In 2013, Bledsoe filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, asserting one claim of ineffective assistance of trial counsel.  That motion was denied in 2014.  Sainsbury also filed a motion pursuant to § 2255 in 2013.  That motion remains technically unresolved, however Sainsbury has requested that the claims contained in it be withdrawn.

In 2016, based on the United States Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which invalidated the "residual clause" in the definition of "violent felony" in the Armed Career Criminal Act, 18 U.S.C. § 924(e), both Bledsoe and Sainsbury filed "protective"[3] motions for relief pursuant to § 2255.  On August 27, 2019, following the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), which invalidated the "residual clause" in the definition of "crime of violence" in 18 U.S.C. § 924(c), the Third Circuit formally authorized the Petitioners' second or successive § 2255 motions.[4]

---

[2]     Bledsoe was also convicted of one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).
[3]     The Court refers to these as "protective" motions as they were filed to protect Petitioners' rights while the Third Circuit determined whether to authorize their second or successive habeas motions based upon the holding of *Johnson*.
[4]     *See In re Matthews*, 934 F.3d 296, 298 n.2 (3d Cir. 2019).

Petitioners' second or successive § 2255 motions are now pending before the Court.  For the reasons set forth below, both motions are denied and dismissed.

## II.    BACKGROUND

### A.    Factual and procedural background

In its decision affirming Petitioners' convictions and sentences on direct appeal, the Third Circuit Court of Appeals set forth the key facts underlying this case as follows:

> This case arises out of two bank robberies. The first robbery occurred in December 2005 at the First Commonwealth Federal Credit Union in Palmer Township, Pennsylvania. Employees identified the robbers as two African American men, one much taller than the other but both wearing masks and armed with handguns. As the robbery concluded, the taller man told the shorter robber "Hurry up, Moses." The men escaped into a waiting Jeep and fled the scene. A witness took down its license number so that, while police did not apprehend the suspects, they were able to find the Jeep's owner, Jamie Cooper.

> The ensuing investigation linked appellants Bledsoe and Sainsbury to the Credit Union robbery. Cooper stated that he had loaned his Jeep to his friend "Moses" and told officers that Moses had returned the Jeep shortly after the time given for the robbery. With Cooper's cooperation, police identified the phone number that Moses had used to speak with Cooper about the Jeep. That phone belonged to Sainsbury's sister-in-law. Cooper also showed police where Moses lived. Police procured warrants for that home and for the Jeep. Searches under those warrants turned up a stocking mask with Bledsoe's DNA on it and letters in which Sainsbury referred to himself as "Moses."

> The second robbery occurred in December 2006 at the Lafayette Ambassador Bank in Emmaus, Pennsylvania. Employees identified the robbers as two African American men, one much taller than the other, wearing masks and armed with handguns. As the robbery concluded, the taller man told the shorter one "Hurry up, hurry up." The men escaped into a waiting Audi and fled the scene.

> Just after the robbery, Emmaus police officer Jeremy Schilling, who was not aware of the robbery, saw the Audi roll through a stop sign. He also observed that one of the three African American men in the car saw him, then looked away nervously. Schilling followed the Audi long enough to run its license number through his computer. According to the computer, the license plate had been registered to a Lexus but was expired. Schilling then sought to pull the Audi over. The driver parked in a residential driveway and got out of the car, walking toward the house. Schilling ordered the driver to return to the car, which he did.

As Schilling approached the Audi, Bledsoe got out of the back seat and ran. Schilling chased Bledsoe through the residential neighborhood and nearby auto dealerships. Schilling announced his foot chase over the police radio at about the same time that news of the robbery, which had taken place nearby, came over the radio. Other officers responded, caught, and arrested Bledsoe. They found rolls of cash on him and a sweatshirt matching the bank robber's sweatshirt in a shed where Bledsoe had briefly hidden from Schilling.

Police could not find Sainsbury or the Audi's driver after returning to the site of the traffic stop. However, they recovered a glove there later determined to have Sainsbury's DNA in it. They also found that the Audi was registered to Sainsbury's sister-in-law. Sainsbury was further linked to the second robbery as a result of calls that Bledsoe made from prison. Bledsoe frequently called Joshua Burton, another accomplice who was then at liberty (but later pled guilty), asking him to negotiate with "Wet Boy" about splitting proceeds from the robbery. During those calls, Bledsoe told Burton when "Wet Boy" was and was not in prison with him. Sainsbury was in that prison on other charges during the same periods as "Wet Boy."

With respect to both robberies, a federal grand jury charged Bledsoe and Sainsbury with conspiracy to commit armed bank robbery, armed bank robbery, and using and carrying a firearm during a violent crime. The grand jury also charged Bledsoe with possession of a firearm by a convicted felon. Both defendants elected to proceed to trial. After nearly three weeks of trial, the jury convicted Bledsoe and Sainsbury on all charges.

*United States v. Bledsoe*, 449 F. App'x 159, 161-62 (3d Cir. 2011).

Following their convictions, on October 5, 2009, Bledsoe was sentenced to an aggregate term of imprisonment of 492 months, and Sainsbury was sentenced to an aggregate term of imprisonment of 396 months. *See* ECF Nos. 300-01. Both Petitioners subsequently appealed their convictions. In a decision dated November 2, 2011, the Third Circuit Court of Appeals found the five asserted grounds of error based on evidentiary issues to be without merit, and affirmed their convictions. *See* ECF No. 327; *United States v. Bledsoe*, 449 F. App'x 159 (3d Cir. 2011).

In 2013, both Bledsoe and Sainsbury filed initial motions for habeas relief pursuant to 28 U.S.C. § 2255, in which they asserted claims of ineffective assistance of trial counsel. *See* ECF

Nos. 329, 336.  In a decision issued on October 27, 2014, District Judge Stengel, who had presided over the trial, denied Bledsoe's § 2255 motion for habeas relief.  *See* ECF Nos. 356-57.  While Sainsbury's § 2255 motion technically remains unresolved,[5] Sainsbury filed a letter with the Court docketed on December 16, 2019, in which he states the following:  "Since I do not believe my original [§ 2255] motion presents a viable issue and may in fact be frivolous, I ask that the Court allow the claims made therein be waived."  ECF No. 404.

Following the district court's adjudication of Bledsoe's initial § 2255 motion, this case remained inactive until the United States Supreme Court issued its decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015).  On or about June 18, 2016, Sainsbury filed a counseled[6] second or successive § 2255 motion — his "protective" motion — arguing that the holding in *Johnson* acts to invalidate his conviction and sentence under 18 U.S.C. § 924(c).[7]  *See* ECF No. 362.  Shortly thereafter, on or about June 28, 2016, the Court received a *pro se* second or successive § 2255 motion from Bledsoe — his "protective" motion — also arguing that *Johnson* acts to invalidate his conviction and sentence under § 924(c).  *See* ECF No. 363.[8]  Petitioners

---

[5]      As to why Sainsbury's motion went unresolved for so long, it appears the "gavel" associated with the motion on the CM/ECF system, the court's electronic docketing system, was improperly "terminated" at some point in the past.  As a result, the Court assumes it was not clear that the motion was in fact unresolved, as no live "gavel" remained associated with it.

[6]      The Federal Community Defenders were appointed to represent Sainsbury for purposes of filing a second or successive habeas motion following *Johnson*.  *See* ECF No. 361.

[7]      Counsel's argument in this initial motion was that *Johnson*'s holding — that the "residual" clause of the definition of "violent felony" in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B) was unconstitutionally vague — applied equally to void the residual clause in the definition of "crime of violence" in 18 U.S.C. § 924(c), and that as a result, Sainsbury no longer had a qualifying predicate "crime of violence" under § 924(c).

[8]      It appears "gavel" associated with this motion on the CM/ECF system was improperly "terminated," *see* ECF No. 365; however, the Court recognizes that this motion remains unresolved.

simultaneously sought authorization from the Third Circuit for leave to proceed on their second or successive habeas motions.  *See* ECF No. 362, 364.

While the issue of Petitioners' ability to proceed on their second or successive § 2255 motions remained pending before the Third Circuit, the docket in this case remained largely inactive.  The case was reassigned from District Judge Stengel to the Undersigned on September 5, 2018.  *See* ECF No. 367.  On August 27, 2019, the Third Circuit formally authorized both Petitioners' pending second or successive habeas motions in light of the United States Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019).[9]  *See* ECF No. 382.  The same day, in light of the Third Circuit's authorization, Petitioners' second or successive habeas motions were re-docketed.  *See* ECF Nos. 375, 383.

On September 6, 2019, counsel from the Federal Community Defenders filed a motion to withdraw as counsel for Sainsbury, communicating that Sainsbury had stated that he no longer wished to be represented by the Federal Community Defenders.  *See* ECF No. 376, 380.  The Court granted counsel's motion shortly thereafter.[10]  *See* ECF No. 378.

On September 18, 2019, the Court received a supplemental memorandum of law in further support of Bledsoe's now authorized second or successive § 2255 motion.  *See* ECF No. 381.  The Court received Sainsbury's supplemental memorandum of law in further support of his

---

[9]      As explained more fully below, similar to the holding in *Johnson*, *Davis* invalidated the residual clause in the definition "crime of violence" in 18 U.S.C. § 924(c) on the grounds that it was unconstitutionally vague.

[10]     Around this time, the Court also received a letter from Sainsbury that the Court construed as a motion to have alternative, and specifically, CJA counsel represent him.  The Court denied that motion without prejudice pending a review of the merits of his successive habeas motion. *See* ECF No. 384.

successive § 2255 motion on or about October 28, 2019.[11]  *See* ECF No. 394.  The government

filed opposition to Sainsbury's motion on or about December 17, 2019, *see* ECF No. 403, and

filed opposition to Bledsoe's motion on or about February 4, 2020, *see* ECF No. 406.  The Court

received Sainsbury's reply memorandum in further support of his § 2255 motion on January 22,

2020, *see* ECF No. 405; Bledsoe's reply memorandum was received on February 12, 2020, *see*

ECF No. 407.[12]

> B.      **The arguments of the parties**

> > 1.      *Tramell Bledsoe*

> > > a.      **Bledsoe's arguments**

The primary vehicle for Bledsoe's arguments in support of his successive § 2255 motion

is his supplemental memorandum of law docketed on September 18, 2019.[13]  *See* ECF No. 381.

In this filing, Bledsoe argues first that *Davis*, in addition to voiding the residual clause of the

definition of "crime of violence" in 18 U.S.C. § 924(c), "settled whether conspiracies are 'crimes

of violence' for purposes of the [the elements clause] of § 924(c)," and settled that question in

the negative.  *See id*. at 2.

---

[11]     The Court also received, on December 16, 2019, Sainsbury's letter to the Court stating
that he no longer wished to pursue the claims set forth in his initial § 2255 motion filed back in
2013.  *See* ECF No. 404.
[12]     Additionally, on October 30, 2019, Bledsoe filed a "motion to dismiss the indictment"
against him, *see* ECF No. 396, which the Court construed and dismissed as an improper
successive habeas motion, *see* ECF No. 397.  Bledsoe subsequently attempted to appeal this
determination, however on May 7, 2020, the Third Circuit denied Bledsoe a certificate of
appealability to pursue his appeal.  *See* ECF No. 408.
[13]     This is necessarily so, as his "protective" § 2255 motion was filed prior to both the
Supreme Court's decision in *Davis*, as well as the Third Circuit's decision in *United States v.
Johnson*, 899 F.3d 191 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 647 (2018), the significance of
which are explained in further detail below.

Next, Bledsoe argues that "the indictment and convictions for counts five and seven -- § 924(c) convictions -- rest on conspiracy to commit bank robbery."  ECF No. 381 at 3.  In support of this contention he quotes the language of the indictment, which, as reproduced in Bledsoe's memorandum, references *both* conspiracy to commit armed bank robbery and armed bank robbery as predicate offenses.  *See id.*  On this point, Bledsoe states that he "does not suggest that the § 924(c) counts do not mention 'armed bank robbery' only that it charges the 'conspiracy to commit armed bank robbery' first."  *Id.* at 6.

Third, Bledsoe argues that if "a criminal judgment has two or more possible statutory grounds, [and] one of the grounds has been held unconstitutional, and it is impossible to say under which clause of the statute the conviction was obtained, then the conviction cannot be upheld."  ECF No. 381 at 4 (quotation marks omitted).  Bledsoe states that this "is exactly [his] situation."  *Id.*; *see id.* at 5 ("[W]hen a trial judge instructs on alternative grounds for conviction, and the jury returns only a general verdict of guilty, the verdict must be set aside i[f] one of the grounds for conviction is legally invalid, and it is impossible to tell whether the conviction rested on the invalid ground.").

Putting these arguments together, Bledsoe is, in sum, contending that because the predicate offenses for his two § 924(c) charges were conspiracy *and* armed bank robbery, and because the jury returned a general verdict of guilty on these two charges "without even a passing mention of which statute it rested its determination on," it is impossible to tell whether he was convicted on the two § 924(c) charges based upon conspiracy to commit armed bank robbery — no longer a "crime of violence" under the lone-surviving elements clause of § 924(c) — or based on armed robbery, which remains a crime of violence.  ECF No. 381 at 5.

In his supplemental memorandum, Bledsoe also argues that his conviction under 18 U.S.C. § 922(g)(1) (*i.e.* for being a felon in possession of a firearm) must be vacated in light of the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019).[14]   ECF No. 381 at 8.  *Rehaif* held that conviction under § 922(g), which lists nine categories of individuals prohibited from possessing firearms, requires an individual to know not only that he possessed a firearm, but also that he had the status of one of the prohibited nine categories.  Bledsoe appears to argue that *Rehaif* introduced a new rule of constitutional law that entitles him to habeas relief.  *See id.* at 10.  On this point, he contends that in his case "the Court specifically instructed the jury that the Government did not have to prove that Bledsoe 'knew' his status as a prohibited person."[15]  *Id.* at 8.

---

[14]   In dismissing Bledsoe's "motion to dismiss" based on *Rehaif* as an unauthorized second or successive habeas motion, this Court has already ruled that any arguments based on *Rehaif* fall outside the limited scope of the Third Circuit's grant of authority to proceed on a successive habeas motion here.  *See* ECF No. 397.  The Third Circuit recently denied Bledsoe a certificate of appealability to appeal this ruling.  *See* ECF No. 408.

[15]   Bledsoe makes two additional arguments in his reply memorandum.  First, he calls the government's position in opposition to his § 2255 motion a "red-herring."  ECF No. 407 at 2.  On this point he states as follows:

> [A] verdict must be set aside if a court instructed a jury that it could rely on two or more independent grounds, and one of those grounds was insufficient. See Zant v. Stephens, 462 U.S. 862, 881 (1983). The Government's response appears to concede that the record is silent as to which clause his § 924(c) convictions rested, and only argues that it was the substantive bank robbery counts. The Government's theory appears to be a ploy to interject confusion and to complicate the issue.

*Id.*  Second, Bledsoe argues that armed bank robbery is not categorically a crime of violence.  In particular, he states that despite the Third Circuit's decision in *United States v. Johnson*, 899 F.3d 191 (3d Cir. 2018), "the bank robbery statute covers 'property'' which is not categorically a crime of violence as the court [held] in United States v. Bowen, No. 17-1011, 2019 U.S. App. LEXIS 26554 (10th Cir. 2019)."  *Id.* at 3.

### b.    The government's opposition

The government has submitted a single filing in opposition to all of Bledsoe's contentions for habeas relief.  The government first observes that each of the two § 924(c) charges against Bledsoe assert that he carried a firearm in relation to two crimes of violence: conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371, and armed bank robbery, in violation of 18 U.S.C. § 2113(d).  ECF No. 406 at 7.  After the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), which invalidated the residual clause of the definition of "crime of violence" in § 924(c), the government concedes that "[t]he conspiracy offense no longer qualifies as a 924(c) crime of violence, as it may be committed without the use of physical force required by the elements clause; rather, the offense may rest on a mere agreement."  *Id.*  "However," the government contends, in *United States v. Johnson*, 899 F.3d 191 (3d Cir. 2018), "the Third Circuit has held that armed bank robbery in violation of 18 U.S.C. § 2113(d) does qualify as a crime of violence under the 924(c) elements clause," and "Bledsoe's 924(c) convictions are therefore valid."  *Id.*

According to the government, this is so because, as the Supreme Court held in *Hedgpeth v. Pulido*, 555 U.S. 57 (2008), where a jury is presented with two theories of liability and one of the theories subsequently becomes invalid, relief cannot be afforded on collateral review "unless the instructional error 'had substantial and injurious effect or influence in determining the jury's verdict.'"  ECF No. 406 at 8 (quoting *Hedgpeth*, 555 U.S. at 58).  Under this standard, which was originally set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), "even a 'reasonable possibility' that the error contributed to the verdict is insufficient to justify relief."  *Id.* at 8-9.  The government contends that Bledsoe is unable to meet this standard:

> The evidence that in this case that guns were used to carry out actual robberies, as opposed to a mere conspiracy, was overwhelming. The jury then convicted Bledsoe

of the substantive armed robbery counts, Counts Four and Six, in violation of 18 U.S.C. § 2113(d), which explicitly required proof of robbery committed by armed force. In these circumstances, it may not be concluded that inclusion of conspiracy as an additional basis of 924(c) liability had a substantial and injurious effect on the verdict. It is apparent that the 924(c) verdict would have been exactly the same were the jury limited to the substantive bank robbery charges alone, and instructed that the government was required to prove that the gun was used or carried in relation to the actual robberies charged in Count Four and Six, and not only a conspiracy.

*Id*. at 10.

### 2.    *Philip Sainsbury*

#### a.    **Sainsbury's arguments**

Sainsbury's primary filing in support of his motion for § 2255 relief is his *pro se* supplementary memorandum docketed on October 28, 2019.[16]  *See* ECF No. 394.  In this filing, Sainsbury raises similar arguments to those of Bledsoe as to why he is entitled to vacatur of both of his § 924(c) convictions following the Supreme Court's decision in *Davis*.  His primary argument is that because the jury was not asked upon which theory of liability his convictions under § 924(c) rested, "it is not clear beyond a reasonable doubt if the jury relied on the now defunct theory of guilt"— that is, conspiracy to commit armed bank robbery, which is not a crime of violence under the elements clause of § 924(c).  *Id*. at 4.  Sainsbury states that his "substantial rights were violated when he was held to answer for a charge under the alternative theory that [sic] the conspiracy could apply," and "had the jury been properly instructed, there is a reasonable probability that Sainsbury would have been sentenced to far less time in prison." *Id*. at 6.  He also takes issue with the fact that this perceived "error" in charging led to

---

[16]    As with Bledsoe, this is necessarily so, as Sainsbury's "protective" § 2255 motion (which, unlike Bledsoe's, was filed by past counsel) was filed prior to both the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), as well as the Third Circuit's decision in *United States v. Johnson*, 899 F.3d 191 (3d Cir. 2018).

Sainsbury's conviction on *two* § 924(c) charges, which itself led to an increased aggregate sentence. *Id.*

There are several other arguments imbedded within Sainsbury's supplemental memorandum. For example, Sainsbury takes issue with the "common" practice of using "general" verdict forms in criminal trials, like the one he states was used in his case. *See* ECF No. 394 at 4-5. He also appears to argue that with respect to his second § 924(c) conviction, there can be no sufficient predicate offense. In particular, Sainsbury states that "[w]ith regard to the second § 924(c) conviction . . . . Sainsbury was charged and convicted of aiding and abetting bank robbery – not substantive bank robbery." [17] *Id.* at 2. He argues that because of this, his conviction on this charge was totally improper. *Id.* Finally, Sainsbury appears to argue that he was sentenced "as if he was found guilty of brandishing" a weapon, which was an improper enhancement given that the jury never made a factual determination as to brandishing. *Id.* at 8. Sainsbury states that this "was an error of constitutional magnitude that the Court should correct at this stage." *Id.*

### b.    The government's opposition

The government makes nearly identical arguments in opposition to Sainsbury's successive § 2255 motion as it does with respect to Bledsoe: that because each of Sainsbury's two § 924(c) convictions was predicated on two offenses — conspiracy to commit armed bank robbery and armed bank robbery — and because one of those two offenses — armed bank robbery — has been explicitly held to be a crime of violence under the elements clause of § 924(c)'s definition of "crime of violence," *Davis*' invalidation of § 924(c)'s residual clause does

---

[17]    As discussed further below, this position is belied by the clear record in this case. *See, e.g.*, ECF No. 262.

not affect Sainsbury's § 924(c) convictions.  The government contends that this is because

Sainsbury (again, similar to Bledsoe) cannot satisfy the standard for showing that an instructional

error warrants relief on collateral attack.  *See id*. at 4-6.  The evidence adduced at trial and the

fact that Sainsbury was convicted of substantive bank robbery does not, according to the

government, permit a finding that inclusion of the conspiracy charge prejudiced Sainsbury; to the

contrary, were conspiracy not charged, the government asserts the result would have been the

same.[18]  *See id*. at 6.

## III.    LEGAL STANDARD AND APPLICABLE LAW

### A.    Motions to vacate under 28 U.S.C. § 2255

Motions filed under 28 U.S.C. § 2255 are the presumptive means by which federal

defendants can challenge their convictions or sentences that are allegedly in violation of the

Constitution or laws of the United States, or are otherwise subject to collateral attack.  *Davis v.*

*United States*, 417 U.S. 333, 343 (1974); *O'Kereke v. United States*, 307 F.3d 117, 122-23 (3d

Cir. 2002).  Section 2255 "states four grounds upon which such relief may be claimed: (1) 'that

the sentence was imposed in violation of the Constitution or laws of the United States;' (2) 'that

the court was without jurisdiction to impose such sentence;' (3) 'that the sentence was in excess

of the maximum authorized by law;' and (4) that the sentence 'is otherwise subject to collateral

attack.'"  *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (quoting 28 U.S.C. § 2255(a)).  In

rendering a decision on a defendant's § 2255 motion, "a district court must 'accept the truth of

the movant's factual allegations unless they are clearly frivolous on the basis of the existing

record.'"  *Johnson v. United States*, 294 F. App'x 709, 710 (3d Cir. 2008) (quoting *United States*

---

[18]    The government does not appear to address Sainsbury's other arguments, such as his argument regarding his sentence with respect to "brandishing," or that he was not in fact convicted of substantive bank robbery.

*v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005)).  However, "vague and conclusory allegations

contained in a § 2255 petition may be disposed of without further investigation by the District

Court."  *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000).

      **B.**     **Second or successive habeas motions and the Court's jurisdiction**

      Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which

significantly altered the standards for habeas corpus relief,[19] "a prisoner may file one collateral

challenge as a matter of course provided it is timely."[20]  *In re Olabode*, 325 F.3d 166, 169 (3d

Cir. 2003) (citing 28 U.S.C. § 2255(e)); *see* 28 U.S.C. § 2244(a).  After a prisoner's one

collateral challenge has been exhausted, leave to file a second or successive habeas motion must

be sought with and authorized by the appropriate court of appeals before a district court can

consider such an application.  28 U.S.C. § 2244(b)(3)(A).  The court of appeals is constrained by

statute to only grant requests to pursue a second or successive habeas motion if the motion

contains "(1) newly discovered evidence that, if proven and viewed in light of the evidence as a

whole, would be sufficient to establish by clear and convincing evidence that no reasonable

factfinder would have found the movant guilty of the offense" or "(2) a new rule of constitutional

law, made retroactive to cases on collateral review by the Supreme Court, that was previously

unavailable."  28 U.S.C. § 2255(h).[21]

---

[19]     "Congress passed AEDPA with the purpose of restricting a defendant's ability to
collaterally attack his conviction or sentence, especially with a second or successive attack."
*United States v. Peppers*, 899 F.3d 211, 222 (3d Cir. 2018).

[20]     Section 2255 motions are subject to "[a] 1-year period of limitation."  28 U.S.C. §
2255(f).

[21]     *See In re Matthews*, 934 F.3d 296, 301 (3d Cir. 2019) ("Section 2244 lists the pre-filing
or gatekeeping requirements applicable to motions under § 2255(h)(2): (1) a petitioner must
'show[ ] that the claim relies on a new rule of constitutional law,' (2) 'made retroactive to cases
on collateral review by the Supreme Court,' (3) 'that was previously unavailable.'" (quoting 28
U.S.C. § 2244(b)(2)(A))); *see also In re Olabode*, 325 F.3d at 169.

Critically, "[a] district court lacks subject-matter jurisdiction over an unauthorized second or successive petition." *United States v. Davies*, No. CR 07-436, 2019 WL 1745795, at *2 (W.D. Pa. Apr. 18, 2019); *Mendoza v. United States*, No. CR 06-167, 2017 WL 1293575, at *2 (W.D. Pa. Apr. 6, 2017) ("Section 2255(h), read in conjunction with § 2244(b)(3)(A) and Rule 9 [of the Rules Governing § 2255 Proceedings] establishes that a district court lacks subject-matter jurisdiction over an unauthorized second or successive § 2255 motion."); *see Burton v. Stewart*, 549 U.S. 147, 157 (2007) (explaining that where a federal prisoner "neither sought nor received authorization from the Court of Appeals before filing his 2002 [habeas] petition, a 'second or successive' petition challenging his custody . . . the District Court was without jurisdiction to entertain it").

Notwithstanding a circuit court of appeal's authorization of a second or successive habeas motion, a district court has an independent duty to determine whether a second or successive 28 U.S.C. § 2255 motion satisfies the gate-keeping requirements set forth in 28 U.S.C. § 2244. *Herrera-Genao v. United States*, No. CV 16-3786, 2020 WL 2520281, at *3 (D.N.J. May 18, 2020) (citing 28 U.S.C. § 2244(b)(4)); *Matthews*, 934 F.3d at 301 (3d Cir. 2019) ("If the court of appeals authorizes the [second or successive] motion, the District Court will have the opportunity to 'consider anew whether the petitioner' indeed meets the § 2244 requirements." (quoting *In re Hoffner*, 870 F.3d 301, 307 (3d Cir. 2017))).

### C.     "Crime of violence" under 18 U.S.C. § 924(c):  *United States v. Davis*, 139 S. Ct. 2319 (2019) and *United States v. Johnson*, 899 F.3d 191 (3d Cir. 2018)

In *United States v. Davis*, 139 S. Ct. 2319 (2019), the United States Supreme Court held that the "residual clause" of the definition of "crime of violence" in 18 U.S.C. § 924(c) was unconstitutionally vague and therefore void.  As the Court in *Davis* observed, § 924(c) "threatens long prison sentences for anyone who uses a firearm in connection with certain other federal

crimes." *Davis*, 139 S. Ct. at 2323.  One of those other federal crimes is a "crime of violence."

18 U.S.C. § 924(c)(1)(A).  Under § 924(c)(3), a "crime of violence" is defined as "an offense

that is a felony and--(A) has as an element the use, attempted use, or threatened use of physical

force against the person or property of another" — this is the so-called "elements clause"— "or

(B) that by its nature, involves a substantial risk that physical force against the person or property

of another may be used in the course of committing the offense"— the so-called "residual

clause."  The Court in *Davis* found that when "read in the way nearly everyone (including the

government) has long understood it," the language of the residual clause "provides no reliable

way to determine which offenses qualify as crimes of violence and thus is unconstitutionally

vague."[22]  *Davis*, 139 S. Ct. at 2324.

Prior to the Supreme Court's decision in *Davis*, the Third Circuit answered one of the

questions central to Petitioners' habeas motions:  whether armed bank robbery under 18 U.S.C.

U.S.C. § 2113(d) constitutes a "crime of violence" under § 924(c).  In that case, *United States v.*

*Johnson*, 899 F.3d 191 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 647 (2018), the criminal defendant

first made the argument that Petitioners here made in their "protective" § 2255 motions:  that like

the § 924(e) residual clause addressed in *Johnson v. United States*, 135 S. Ct. 2551 (2015), the

---

[22]      The decision in *Davis* was preceded by the Supreme Court's 2015 decision in *Johnson v.*
*United States*, 135 S.Ct. 2551 (2015) — the case prompting Petitioners' protective § 2255
motions.  The Court in *Johnson* reached a similar conclusion to that reached by the Court in
*Davis*, however with respect to a different federal statute.  In *Johnson*, "the Court addressed the
residual clause of the Armed Career Criminal Act (ACCA), which defined a 'violent felony' to
include offenses that presented a 'serious potential risk of physical injury to another.'" *Davis*,
139 S. Ct.  at 2326 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).  *Johnson* held that the "categorical
approach" that the ACCA's residual clause required judge's to use in determining whether an
offense qualified as a "violent felony" produced "more unpredictability and arbitrariness" when
it comes to specifying unlawful conduct than the Constitution allows.  135 S. Ct. 2558-59.  The
ACCA's residual clause in the definition of "violent felony" was therefore found to be
unconstitutionally vague.

residual clause in § 924(c)'s definition of "crime of violence" was void for vagueness.  However, the defendant also argued that armed bank robbery in violation of 18 U.S.C. § 2113(d) was not a crime of violence under the elements clause of § 924(c).  In the end, the Third Circuit did not reach the ultimate question of whether the residual clause of § 924(c) was void for vagueness — an issue which is now moot in light of *Davis*.  Rather, it was clear to the court that armed bank robbery under § 2113(d) "meets the elements clause [of § 924(c)]" because "it 'has as an element the use, attempted use, or threatened use of physical force.'"  *Johnson*, 899 F.3d at 204 (quoting 18 U.S.C. § 924(c)(3)(A)).  As the court explained, "[o]ne cannot assault a person, or jeopardize his or her life with a dangerous weapon"— elements of armed bank robbery under § 2113(d) — "unless one uses, attempts to use, or threatens physical force."  *Johnson*, 899 F.3d at 204.

As a consequence, in the Third Circuit, it is settled law that armed bank robbery in violation of 18 U.S.C. § 2113(d) constitutes a "crime of violence" under the elements clause of § 924(c).

### D.    Collateral review of instructional error:  *Brecht v. Abrahamson*, 507 U.S. 619 (1993) and *Hedgpeth v. Pulido*, 555 U.S. 57 (2008)

In *Hedgpeth v. Pulido*, 555 U.S. 57 (2008), the Supreme Court addressed the appropriate standard for reviewing collateral attacks on instructional errors, and specifically the error of instructing the jury on multiple theories of liability, one of which is improper — *i.e.*, the circumstances underlying Petitioners' claims here.  The Ninth Circuit Court of Appeals had previously determined that such errors are "structural," requiring that the conviction be set aside on collateral review without regard to whether the flaw in the instructions prejudiced the defendant.  *Pulido v. Chrones,* 487 F.3d 669 (2007) (per curiam).  The Supreme Court disagreed, instead holding that the appropriate standard was the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993):  "a reviewing court finding such error should ask whether the flaw in the

instructions 'had substantial and injurious effect or influence in determining the jury's verdict.'"[23]  *Hedgpeth*, 555 U.S. at 58 (quoting *Brecht*, 507 U.S. at 623).  The Court reaffirmed that "while there are some errors to which [harmless-error analysis] does not apply, they are the exception and not the rule," *Hedgpeth*, 555 U.S. at 61 (quoting *Rose v. Clark*, 478 U.S. 570, 578 (1986)), and that "harmless-error analysis applies to instructional errors so long as the error at issue does not categorically 'vitiat[e] *all* the jury's findings,'" *Hedgpeth*, 555 U.S. at 61 (emphasis in original) (quoting *Neder v. United States*, 527 U.S. 1, 11(1999)).

Notably, *Brecht* and *Hedgpeth* involved federal habeas petitions filed by defendants convicted in state court.  As the government points out in its opposition memoranda here, neither the Third Circuit nor the Supreme Court has, to date, determined whether the *Brecht* standard is applicable to federal habeas proceedings under 28 U.S.C. § 2255.  *See Adams v. United States*, 570 F. App'x 126, 129 n.1 (3d Cir. 2014) ("Although we regularly apply the *Brecht* standard in the § 2254 context (*see, e.g., Adamson v. Cathel,* 633 F.3d 248, 259–60 (3d Cir.2011), *Lewis v. Pinchak,* 348 F.3d 355, 359 (3d Cir.2003)), we have yet to consider which harmless error formulation governs constitutional errors of the trial type in habeas petitions brought by federal

---

[23]      In *Brecht*, the Court declined to apply the standard set forth in *Chapman v. California*, which applies on direct review of constitutional error and requires a showing that the error was "harmless beyond a reasonable doubt."  386 U.S. 18, 24 (1967).  The Court in *Brecht* explained that "[t]he imbalance of the costs and benefits of applying the *Chapman* harmless-error standard on collateral review counsels in favor of applying a less onerous standard on habeas review of constitutional error."  507 U.S. at 637.  Instead, the Court decided to apply the standard set forth in *Kotteakos v. United States*, 328 U.S. 750 (1946), under which "habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"  *Id.*  The Court in *Brecht* went on to explain that "granting habeas relief merely because there is a 'reasonable possibility' that trial error contributed to the verdict"— a circumstances mandated by the *Chapman* standard but precluded by the *Brecht* (and *Hedgpeth*) standard — "is at odds with the historic meaning of habeas corpus—to afford relief to those whom society has 'grievously wronged.'"  *Id.*

prisoners pursuant to § 2255.").  Nevertheless, in consideration of the great weight of authority

from other Circuits, and for the reasons discussed in those cases, the Court finds the *Brecht*

standard is applicable to the instructional error alleged in the § 2255 motions here.  *See id*.

("Nearly every other Court of Appeals applies the *Brecht* standard to § 2255 petitions."); *see also*

*United States v. Smith*, 723 F.3d 510, 517 (4th Cir. 2013) (concluding that "the *Brecht* standard

of review for harmlessness is better suited to § 2255 cases than is the *Chapman* standard

applicable to direct appeals" and collecting cases).

## IV.    ANALYSIS

### A.    Jurisdictional analysis:  Petitioners' successive § 2255 motions are properly before the Court — in part

Despite having received authorization from the Third Circuit to pursue a successive §

2255 motion, *see* ECF No. 374, the Court must consider as an initial matter whether Petitioners'

successive § 2255 motions satisfy the gate-keeping requirements of § 2244.  28 U.S.C. §

2244(b)(4) ("A district court shall dismiss any claim presented in a second or successive

application that the court of appeals has authorized to be filed unless the applicant shows that the

claim satisfies the requirements of this section."); *In re Matthews*, 934 F.3d 296, 301 (3d Cir.

2019) ("Section 2244 lists the pre-filing or gatekeeping requirements applicable to motions under

§ 2255(h)(2) . . . . If the court of appeals authorizes the [second or successive] motion, the

District Court will have the opportunity to 'consider anew whether the petitioner' indeed meets

the § 2244 requirements." (quoting *Hoffner*, 870 F.3d at 307)).

The Court finds that because Petitioners' successive § 2255 motions purport to rely on a

new rule of constitutional law that has been made retroactive and was previously unavailable, the

Court may consider the merits of the following limited issue:  whether Petitioners' convictions

under 18 U.S.C. § 924(c) and the resulting sentences are valid in light of the new rule set forth by

the Supreme Court in *Davis*.  *See Hoffner*, 870 F.3d at 308 (explaining that the text of §

2255(h)(2), as well as the context of § 2244(b), "supports a permissive and flexible approach to

whether a petitioner 'relies' on a qualifying new rule"); *see also Herrera-Genao*, 2020 WL

2520281, at *3 ("The Court concludes that Petitioners meet [the gate-keeping] standard because

their claims rely on the rule announced in *Davis* and it is plausible on the face of the motions that

Petitioners were sentenced under the voided residual clause. The Court will proceed to the

merits."); *Matthews*, 934 F.3d at 301 ("Whether the Petitioners' crimes fall under the elements

clause or the challenged residual clause is itself a merits inquiry.").

    The limited nature of the Court's jurisdiction here necessarily means that the additional

claims put forward by Petitioners in their filings are, as explained below, beyond the scope of

that jurisdiction.

    Because both Petitioners filed initial § 2255 motions in 2013, any successive § 2255

motions on which Petitioners can proceed must be authorized by the Third Circuit based on

either newly discovered evidence or a new rule of constitutional law made retroactive and

previously unavailable.  28 U.S.C. § 2255(h).  This took place in *In re Matthews*, 934 F.3d 296

(3d Cir. 2019).  In that case, the Third Circuit authorized five "lead" applications to pursue

second or successive § 2255 motions based on the new rule of constitutional law announced in

*United States v. Davis*, 139 S. Ct. 2319 (2019), along with "approximately two hundred [other]

such applications that were stayed following the consolidation of the[ ] five lead applications."

*Id*. at 298 n.2.  Two of these applications were the "protective" motions filed by Petitioners in

2016.  The court concluded that based upon *Davis*, each of these applications for leave to

proceed on successive § 2255 motions met the "pre-filing or gatekeeping requirements applicable to [second or successive] motions under § 2255(h)(2)."[24]  *Id.* at 301.

The relevant question then is which of Petitioners' claims (other than the direct challenges to their § 924(c) convictions based upon the rule set forth in *Davis*) fall properly within the scope of the Third Circuit's authorization in *Matthews*.[25]  The answer to this question is:  none of them.

As referenced previously, the Court has identified the following arguments in Petitioners' filings in addition to the contention that their § 924(c) convictions and the sentences must be vacated in light of *Davis*:  (1) Bledsoe's conviction under 18 U.S.C. § 922(g)(1) must be vacated in light of the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019); (2) the use of a "general" verdict form here somehow invalidates Sainsbury's § 924(c) convictions; (3)  "[w]ith regard to the second § 924(c) conviction . . . . Sainsbury was charged and convicted of aiding and abetting bank robbery – not substantive bank robbery," and there can be no predicate offense for this conviction as a result; and (4) Sainsbury was sentenced as if he had "brandished" a weapon, which was an improper enhancement given that the jury never made a factual determination to support "brandishing."

These arguments are problematic on their face — for example, as a factual matter, Sainsbury was indeed convicted of substantive bank robbery with respect to his second § 924(c)

---

[24]    All the successive motions authorized in *Matthews*, including Petitioners' motions, were initially filed to challenge convictions under § 924(c) based on the Supreme Court's 2015 decision in *Johnson*.  However, while these applications for leave to proceed on successive § 2255 motions were pending before the Third Circuit, the Supreme Court issued its decision in *Davis* — a decision which, as discussed, announced a new constitutional rule directly applicable to the applications for successive habeas motions to challenge § 924(c) convictions.

[25]    Courts review claims contained within habeas petitions on an individual, claim-by-claim basis.  *See Fielder v. Varner*, 379 F.3d 113, 118 (3d Cir. 2004).

conviction, *see* ECF No. 262 at 4 — however, the Court need not, and in fact cannot, engage

them.  The grant of authorization in *Matthews* was limited to successive § 2255 motions

challenging § 924(c) convictions based on *Davis*' invalidation § 924(c)(3)(B), which in essence

concerns a determination of whether an alleged predicate offense qualifies as a "crime of

violence" under the elements clause of the statute's definition of that term, or under the now void

residual clause.  *See Matthews*, 934 F.3d at 301 ("Whether the Petitioners' crimes fall under the

elements clause or the challenged residual clause is itself a merits inquiry.").  The claims

identified above are distinct from and do not concern the issue of which clause of the definition

of "crime of violence" in § 924(c) the Petitioners' predicate offenses fall under.  As a result, it is

clear that these additional claims were not — and indeed could not have been[26] — authorized by

the Third Circuit in *Matthews* as bases for successive § 2255 motions.

  Because, as identified above, none of the additional successive claims for habeas relief

that Petitioners seek to raise were, or could have been, authorized by the Third Circuit based on

the rule announced in *Davis*, the Court does not have jurisdiction to entertain them.  *United*

*States v. Davies*, No. CR 07-436, 2019 WL 1745795, at *2 (W.D. Pa. Apr. 18, 2019); *Mendoza*

*v. United States*, No. CR 06-167, 2017 WL 1293575, at *2 (W.D. Pa. Apr. 6, 2017); *Burton v.*

*Stewart*, 549 U.S. 147, 157 (2007).

---

[26]  While these claims most certainly were not authorized as bases for successive habeas
motions in *Matthews*, none of these claims *could* serve as the basis for a second or successive
habeas motion based on *Davis*:  using the language of the gate-keeping statute itself, none of
these "claim[s] rel[y] on a new rule of constitutional law" as announced in that case.  28 U.S.C. §
2244(b)(2)(A); *see Matthews*, 934 F.3d at 301 ("Section 2244 lists the pre-filing or gatekeeping
requirements applicable to motions under § 2255(h)(2) . . . .").
  Moreover, this Court has already ruled that Bledsoe's claim based on *Rehaif* falls outside
the limited scope of the Third Circuit's grant of authority to proceed on a successive § 2255
motion.  *See* ECF No. 397.  The Third Circuit recently denied Bledsoe a certificate of
appealability to appeal this determination.  *See* ECF No. 408.

**B.      Merits analysis:  Petitioners' convictions under 18 U.S.C. § 924(c) are valid**

The Court next turns to the merits of Petitioners' authorized habeas claims, which can be distilled to the following proposition:  the rule announced by the Supreme Court in *Davis* necessarily invalidates Petitioners' § 924(c) convictions and resulting sentences because (i) *Davis* invalidated the residual clause of § 924(c)'s definition of "crime of violence," (ii) one of the two theories of liability put to the jury — conspiracy to commit armed bank robbery — is not a "crime of violence" under the elements clause of § 924(c)'s definition of that term, the only clause remaining in effect after *Davis*, and (iii) it is impossible to determine which theory of liability — valid (armed bank robbery) or invalid (conspiracy) — was the basis for the jury's verdict on each of the § 924(c) convictions.  This Court disagrees.  To the contrary, under the applicable standard for collateral review of instructional error as set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993) and applied in *Hedgpeth v. Pulido*, 555 U.S. 57 (2008), it is not the case that "the flaw in the instructions 'had substantial and injurious effect or influence in determining the jury's verdict'" with respect to Petitioners' § 924(c) convictions.  *Hedgpeth*, 555 U.S. at 58 (quoting *Brecht*, 507 U.S. at 623).

As a threshold matter, the Court recognizes, as discussed above, that armed bank robbery in violation of 18 U.S.C. § 2113(d) constitutes a "crime of violence" under § 924(c) and remains so even after the Supreme Court's decision in *Davis*.  This cannot reasonably be disputed following the Third Circuit's decision in *United States v. Johnson*, 899 F.3d 191 (3d Cir. 2018).  As the court stated in that case, armed bank robbery under § 2113(d) "meets the elements clause [of § 924(c)]" because "it 'has as an element the use, attempted use, or threatened use of physical force.'"  *Id*. at 204 (quoting 18 U.S.C. § 924(c)(3)(A)).  Indeed, "[o]ne cannot assault a person, or jeopardize his or her life with a dangerous weapon"— elements of armed bank robbery under

§ 2113(d) — "unless one uses, attempts to use, or threatens physical force." *Johnson*, 899 F.3d at 204.  Bledsoe's argument that armed bank robbery is not categorically a crime of violence because "the bank robbery statute covers 'property,'" ECF No. 407 at 3, is therefore without merit.[27]

Having established that armed bank robbery remains a § 924(c) "crime of violence," the next, and indeed, ultimate question is whether the instructional error at issue here — instructing the jury on a theory of § 924(c) liability predicated on conspiracy to commit armed bank robbery under 18 U.S.C. § 371, which is not a "crime of violence" under the elements clause of § 924(c), in addition to a theory predicated on armed bank robbery itself — rises to a level entitling Petitioners to habeas relief.  It does not.

The government contends, and the Court agrees, that "[t]he evidence that in this case guns were used to carry out actual robberies, as opposed to a mere conspiracy, was overwhelming."  ECF Nos. 403 at 6; 406 at 10.  As counsel for the government summarized to the jury in closing arguments, multiple eyewitnesses to the two bank robberies testified about the appearance and conduct of the two men who committed the robberies here and their use of handguns in the process.[28]  Additionally, extensive evidence beyond the eyewitness testimony

---

[27]     The decision Bledsoe cites for support of his contention here, *United States v. Bowen*, 936 F.3d 1091 (10th Cir. 2019), is an out-of-circuit decision that is not binding on this Court. Perhaps more importantly, the case does not concern, discuss, or even mention armed bank robbery under 18 U.S.C. § 2113(d).

[28]     Regarding the first robbery:  *see, e.g.*, ECF No. 380 at 17: 11-21 ("[T]he taller of the two Defendants. . . . [W]hat does he do?  Well, he's got a gun on him.  And he doesn't just display the gun and say 'we're here for the money.'  What does he do?  Jackie Mutz tells you.  He puts the gun right up to her face.  Is that necessary?  Do you think Jackie Mutz would have resisted giving the money if he just showed the gun, or even if he said he had a gun?  But that's not what happened.  She told you.  She showed you with her hand. Right up to that young girl's face he held that gun. And he demanded the money and he shouted orders."); *id*. at 18: 8-12 ("[T]hese women told you that when they were looking up at these guns, Melanie Dewey who told you she knows guns, she's married to a hunter, they have guns in the house, she felt the steel of the gun

linking both Defendants to the actual armed bank robberies at issue was presented to the jury, as

opposed to evidence of only a conspiracy.[29]  As a result of the evidence, both Bledsoe and

––––––––––––––––––––

at one point put up against her back."); *id*. at 21: 1-6 ("I want to do just a quick recap of where
we are here, okay?  First Commonwealth Credit Union, to this point, two male blacks come in,
stocking masks, jump over the counter, one noticeably taller than the other, noticeably taller than
the other.  They both have handguns, according to the victims.").

Regarding the second robbery:  *see, e.g.*, ECF No. 280 at 31: 4-8 ("They told you they
were working, Christmas trees, the whole thing, all right?  The day gets shattered.  Just after
lunch, two male blacks come in, one taller than the other noticeably, wearing masks, wearing
gloves, carrying handguns."), 17-22 ("Same thing, the taller robber.  Again, the gun, up to the
face.  Again, they push these women.  You heard from Raina, that she got pushed up back against
the wall, all the way to the wall as far as she can go, she got pushed back.  They yell orders at
them and they pushed them around if they didn't move fast enough.").

Regarding both robberies:  *see, e.g.*, ECF No. 280 at 68: 20-24 ("You heard all the
evidence in this case.  You heard from the women who testified.  And I want to say their names
again.  You heard from Jackie, you heard from Michelle, you heard from Melanie, you heard
from Raina, you heard from Lisa, you heard from Valerie and you heard from Leanne.").

[29]       *See, e.g..* ECF No. 280 at 38: 11-18 ("And [Det. Apgar] searched Tramell Bledsoe.  And
what's in Tramell Bledsoe's pockets?  What's in his pockets, ladies and gentlemen?  Almost
$7,000 in cash.  Almost $7,000 in cash, much of it wrapped with wrappers from Lafayette
Ambassador Bank.  With wrappers with the date of the robbery and with the lady's name Selle
(phonetic), Leanne Hittinger, formerly Leanne Selle.  Her name is on the money in his pockets.
It's in his pockets, ladies and gentlemen."); *id*. at 42: 24-25, 43: 1-7 ("And what's there?  What
do they find underneath that black convertible Porsche?  A .25 caliber handgun, loaded, live
ammunition, seven rounds.  Right in the pursuit path.  He doesn't touch it.  He doesn't pick it up.
See it there?  And you heard some of the witnesses say well, it was a black gun, wasn't it, this
isn't a black gun.  You see that photo?  Hold that photo up again.  Again, when this is being
pointed at you, it might not be as easy to tell when you're looking at this part of it what the color
is."); *id*. at 45: 23-25 ("So they compare that.  And guess what?  Bingo, a match, Phil Sainsbury,
Moses, the shorter of the two robbers, his DNA.  His DNA on that glove."); *id*. at 49: 23-25, 50:
1-2 ("But we're not done.  There's a lot more.  And these aren't things that I'm telling you.
These aren't things that police witnesses are telling you.  These aren't things that the women
who looked down the barrels of those guns are telling you."); *id*. at 59: 17-25 ("Tramell Bledsoe
is telling you where he put the gun, ladies and gentlemen.  He's telling you what kind of gun it
was, a .25 caliber, Reggie Bush.  He's telling you he put it underneath the black convertible.  All
those cars there on that lot, all those hundreds if not thousands of cars in front of the Knopf Auto
Dealership, under a black convertible, by the -- the street but not the street, and by the stairs.
He's telling you exactly, exactly where he put the gun that he used in the Lafayette Ambassador
Bank robbery."); *id*. at 68: 3-12 ("You see the similarities in the two, both of the, Christmastime
robberies, one year apart.  Both of them, two male blacks, one noticeably taller than the other.
Both of them, wearing masks, wearing gloves.  Both of them, the white plastic bag the shorter
guy is carrying.  Both of them, they come in and take over the bank.  They don't pass notes 'this
is a stickup, give me your robbery (sic)', they take over, they get in the workspace, they put guns

Sainsbury were convicted of two counts of armed bank robbery, in violation of 18 U.S.C. §

2113(d) — one for the armed robbery of First Commonwealth Federal Credit Union in Palmer

Township in December 2005, and one for the armed robbery of the Lafayette Ambassador Bank

in Emmaus in December 2006.

  In sum, based on the sufficiency of the evidence presented at trial, and in light of the

theory of the case presented by the government at trial, which focused on the armed robberies

themselves rather than a mere conspiracy, the Court does not find that the submission to the jury

of a theory of § 924(c) liability premised on conspiracy to commit armed bank robbery "had

substantial and injurious effect or influence in determining the jury's verdict" with respect to

Petitioners' § 924(c) convictions.  *Hedgpeth*, 555 U.S. at 58.  There is not a "reasonable

possibility" that but for the error, the verdict on the§ 924(c) charges would have been different.

Even if there existed a "reasonable possibility" of a different result, this would not be sufficient

in itself to warrant relief under the *Brecht* standard.[30]  *Brecht*, 507 U.S. at 637 ("[G]ranting

habeas relief merely because there is a 'reasonable possibility' that trial error contributed to the

verdict, is at odds with the historic meaning of habeas corpus—to afford relief to those whom

society has 'grievously wronged.'" (citations omitted)).  To the contrary, the Court finds that it is

all but certain that both Petitioners would have been convicted on the § 924(c) charges even if

the only predicate "crimes of violence" submitted to the jury were the two armed robberies.[31]

---

right up to the faces of the victims.  They don't need to do that, but they did it.  In both
robberies.").

[30] As discussed previously, Sainsbury claims that "it is not clear beyond a reasonable doubt
if the jury relied on the now defunct theory of guilt" with respect to his § 924(c) convictions.
ECF No. 394 at 4.  However, this is not the correct standard for review of a collateral challenge
to an instructional error.

[31] This is consistent with what the Third Circuit found upon consideration of Bledsoe's
initial direct appeal based, at least in part, on the sufficiency of the evidence.  *See United States
v. Bledsoe*, 449 F. App'x 159, 162 (3d Cir. 2011) ("Bledsoe, who alone challenges the

*Cf. United States v. Duka*, 671 F.3d 329, 356 (3d Cir. 2011) ("We acknowledge that the jury instructions did not clearly distinguish between the attempt and actual possession theories of liability . . . . But we conclude in light of the evidence and the way the government argued the case to the jury that there is no reasonable possibility that the jury convicted Dritan and Shain of the unlawful attempt, as opposed to the proper actual possession, offense.").

Under such circumstances, habeas relief based on instructional error in light of the rule announced in *United States v. Davis*, 139 S. Ct. 2319 (2019) is not warranted.

### C.     There is no basis for the issuance of a certificate of appealability

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" *Tomlin v. Britton*, 448 F. App'x 224, 227 (3d Cir. 2011) (citing 28 U.S.C. § 2253(c)). "Where a district court has rejected the constitutional claims on the merits . . . the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In the Court's view, it is not the case that reasonable jurists could disagree that the new rule announced by the Supreme Court in *Davis* does not invalidate Petitioners' convictions under § 924(c). It is clear their convictions under that statute would, in all certainty, have been the

---

sufficiency of the evidence against him, has not carried this heavy burden. The two bank robberies were undertaken in a similar fashion at a similar time of year. Bledsoe's physical profile matches that of the taller robber seen on both bank videos holding a handgun. DNA evidence linked Bledsoe to articles of clothing used in both robberies. He was arrested after fleeing a traffic stop of the car in which the Emmaus bank robbers escaped in the vicinity of, and shortly after, the robbery. Bledsoe's calls from prison allude to his part in that robbery. A jury easily could have convicted Bledsoe based on this evidence.").

same even omitting the now invalid conspiracy-based theory of § 924(c) liability.  It is moreover the Court's view that reasonable jurists could not disagree that the additional claims Petitioners attempt to forward in their filings have not been authorized by the Third Circuit as bases for a successive § 2255 motions, and that the Court does not have jurisdiction to entertain these claims.

> **D.  There is no basis for an evidentiary hearing**

"A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the 'motion and the files and records of the case conclusively show' that the movant is not entitled to relief."  *McGhee v. United States*, No. CR 90-75, 2020 WL 2770037, at *3 (D. Del. May 28, 2020) (quoting 28 U.S.C. § 2255 and citing *United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005) and *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005)).

Here, because the record conclusively demonstrates that, under the applicable standard, Petitioners are not entitled to relief based on the trial court's instructional error, the Court declines to hold an evidentiary hearing on Petitioners' § 2255 motions.

V.      **CONCLUSION**

For the reasons set forth herein, this Court concludes that there is no basis to grant

Petitioners habeas relief pursuant to 28 U.S.C. § 2255.  Their successive § 2255 motions are

therefore denied and dismissed.[32]

Separate Orders follow this Opinion.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge

---

[32]      Additionally, Sainsbury's initial § 2255 motion, filed in 2013, *see* ECF No. 336, is
deemed withdrawn based on the following representation made by Sainsbury in his letter to the
Court docketed on December 16, 2019:  "Since I do not believe my original [§ 2255] motion
presents a viable issue and may in fact be frivolous, I ask that the Court allow the claims made
therein be waived."  ECF No. 404.