UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,  :
                           :
     v.                    :    No. 07-cr-0165-01
                           :
TRAMELL BLEDSOE,           :

**O P I N I O N**
Motion For Compassionate Release, ECF No. 445 – Denied

**Joseph F. Leeson, Jr.**                                          **April 28, 2022**
**United States District Judge**

## I.   INTRODUCTION

Tramell Bledsoe seeks a compassionate release from his 41-year prison sentence under the First Step Act. *See* Mot., ECF No. 445. Bledsoe argues that his sentence should be reduced because his sentence would be much shorter if he were convicted of the same crimes today. He also argues he should be released early for concerns regarding the coronavirus. For the reasons below, the Court denies Bledsoe's Motion.

## II.  BACKGROUND

Shortly before Christmas in 2005, Bledsoe robbed a credit union at gunpoint. One year later, again just days before Christmas, Bledsoe robbed a bank at gunpoint. As a result, a grand jury returned a multiple count indictment against Bledsoe and a co-defendant.[1] A jury found Bledsoe guilty of conspiracy to commit armed robbery, two counts of armed robbery, two counts of use of a firearm during a crime of violence, and one count of possession of a firearm by a felon.

---

[1] Bledsoe's codefendant, Philip Sainsbury, previously filed a motion for compassionate release making almost the exact same arguments Bledsoe makes here. *See* ECF No. 431. The Court denied Sainsbury's request for similar reasons that it denies Bledsoe's. For that reason, this Opinion is largely a restatement of its prior opinion issued denying Sainsbury's motion. *See* ECF No. 443.

Bledsoe's use of a firearm during both robberies constituted two violations of section 924(c) of 18 U.S.C. At the time of his sentencing, each additional violation of section 924(c) after the first violation carried a 25-year mandatory minimum. *See* 18 U.S.C. § 924(c)(1)(C)(i) (2009) (amended by First Step Act of 2018, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22). As a result, he was sentenced to a total of 16 years of imprisonment on five of six counts and an additional 25-year mandatory minimum of imprisonment on the sixth count because it was a second offense under section 924(c). *See* ECF No. 303. Since the term of imprisonment for his second violation of section 924(c) runs consecutively, his final sentence amounted to 41 years of imprisonment. *See id.*

Bledsoe has now served more than 15 years of his sentence. Factoring in his credit for good conduct, his earliest release date would be November 27, 2041.

Several years after Bledsoe's sentencing in 2009, the COVID pandemic hit. In order to combat COVID in the prison population, the Bureau of Prisons (BOP) took significant steps, including offering emergency vaccines to inmates. Bledsoe, however, refused to receive any version of the vaccine.[2]

### III. LEGAL STANDARD —The First Step Act—Review of Applicable Law

Congress passed the First Step Act in 2018, in part, to reduce the growing prisoner population in the Federal prison system. *See United States v. Simons*, 375 F. Supp. 3d 379, 385 (E.D.N.Y. 2019). Under the First Step Act, a defendant may motion a district court to reduce his sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The First Step Act does not define what qualifies as "extraordinary" and "compelling," but the United States Sentencing Commission has issued a policy statement addressing the topic.

---

[2]   The Government makes this allegation in its response to the Motion. *See* Resp. 11 n. 2, ECF No. 446. However, even if the Court assumed that Bledsoe received the vaccine, it would not alter the Court's analysis in this Opinion because Bledsoe has not met his burden regarding early release for concerns related to the coronavirus.

The policy statement gives four circumstances under which extraordinary and compelling reasons could exist: (1) medical condition; (2) age; (3) family circumstances; and (4) other reasons as determined by the Director of the BOP. *See* U.S.S.G. § 1B1.13 cmt. N.1 (A)–(D). The policy statement is not binding on district courts, but "it still sheds light on the meaning of extraordinary and compelling reasons." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021).

Regarding compassionate release for a medical condition, the policy statement suggests that courts should consider whether the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. N.1.

Regarding compassionate release for age related reasons, the policy statement states that courts may grant early release if the "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

If extraordinary and compelling reasons justify the reduction of a defendant's sentence, courts then consider the factors set forth in section 3553(a) and whether the defendant poses a danger to the safety of any other person or to the community.[3] *See* 18 U.S.C. § 3582(c)(1)(A); *see also id.* § 3142(g) "A defendant has the burden of establishing circumstances warranting his release." *United States v. Neal*, No. 2:08-CR-00628-JMG-5, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020).

---

[3] The factors include (1) the nature and circumstances of the offense and history of the defendant, (2) the need for the sentence to reflect the seriousness of the offense, (3) the kinds of sentences available, (4) the sentencing range established for the offense, (5) any relevant policy statement from the Sentencing Commission, (6), the need to avoid unwarranted sentence disparities among similar defendants, and (7) the need to provide restitution to any victims. *See* 18 U.S.C.A § 3553 (a)(1)–(7).

The First Step Act also amended prior sentencing guidelines for offenses under section 924(c). *See* First Step Act § 403(a). Section 924(c) originally imposed on defendants "a term of imprisonment not less than 25 years" for every "second or subsequent conviction under this subsection." *See* 18 U.S.C. § 924(c)(1)(C)(i) (2009) (amended by First Step Act § 403(a)). This practice of adding mandatory 25-year sentences with each violation, even if charged in a single case, is known as "stacking."

The First Step Act changed that section so that defendants were only subject to stacking of 25-year sentences for "violation[s] of this subsection that occurs *after a prior conviction under this subsection has become final*." First Step Act § 403(a) (emphasis added). Congress did not make this amendment apply retroactively. *See id.* § 403(b) ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.").

## IV.   ANALYSIS

In his Motion, Bledsoe gives two main reasons that he contends are extraordinary and compelling justifications for his early release. First, because he would receive a shorter sentence if he was sentenced for the same crimes today. Second, because he is 41 years of age and has "concerns and fears about the spread and effects of COVID-19." Mot. 2. The Court addresses and rejects both arguments in turn. It then briefly addresses several other reasons that Bledsoe asserts qualify as extraordinary and compelling reasons for reducing his sentence.

Ultimately, the Court determines that Bledsoe does not meet his burden of establishing that there are extraordinary and compelling reasons to reduce his sentence. Since Bledsoe does not establish any extraordinary and compelling reasons for his release, this Court does not analyze the factors set forth in section 3553(a). Nor does it analyze whether his release would pose a danger to any other person and the community.

### a. The fact that Bledsoe's sentence would be shorter if imposed post First Step Act is not an extraordinary and compelling reason for early release.

Bledsoe first asserts that he should be released early because his sentence would be shorter if he were sentenced for the same crimes today. It's true that Bledsoe's elevated sentence is largely because, at the time, each additional section 924(c) violation carried a 25-year mandatory minimum. *See* 18 U.S.C. § 924(c)(1)(C)(i) (2009) (amended by First Step Act § 403(a)).

The same section today, now amended by the First Step Act, no longer has the same stacking of 25-year minimums for additional offenses unless the defendant has already been convicted of a section 924(c) charge at the time of the subsequent offense(s). *See* First Step Act § 403(a). In other words, stacking 25-year minimums is no longer done for violations in the same case, like it was done in Bledsoe's case. If he were sentenced for the same crimes today, the mandatory minimum for his second violation of section 924 would be 7 years instead of 25. *See* 18 U.S.C. §924(c)(1)(A)(ii) ("any person who, during and in relation to any crime of violence . . . uses or carries a firearm . . . in furtherance of any such crime . . . if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years").

For that reason, Bledsoe argues that his current sentence is overly harsh, which qualifies as an extraordinary and compelling reason to reduce his sentence. The Third Circuit Court of Appeals addressed this exact issue in *United States v. Andrews*, 12 F.4th 255 (3d Cir. 2021).

In *Andrews*, the defendant, like Bledsoe, was convicted of multiple section 924(c) offenses in a single case and was sentenced under the prior version of section 924(c). *See id.* at 256. If the defendant had been sentenced after Congress passed the First Step Act, he would have been subject to a mandatory minimum of 91 years. *See id.* Instead, he was sentenced to a mandatory minimum of 312 years. *See id.* Despite the stark contrast in the length of sentences—the only difference being when the defendant was sentenced—the Third Circuit determined that there were not extraordinary and compelling reasons to reduce his 312-year sentence. *See id.* at 260–61.

The Third Circuit reasoned that "Congress specifically decided that the changes to the § 924(c) mandatory minimums would not apply to people who had already been sentenced." *See id.* at 261; *see also* First Step Act § 403(b). "'[I]n federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced.'" *See id.* (quoting *Dorsey v. United States*, 567 U.S. 260, 280 (2012)). The Third Circuit was crystal clear when it held, "we will not construe Congress's nonretroactivity directive as simultaneously creating an extraordinary and compelling reason for early release." *See* 12 F.4th 255, 261.

Prior to *Andrews*, many courts in this district determined that the vast difference in the length of sentences received pre-First Step Act compared to those received post was still an important factor when adjudicating a motion for compassionate release even though the First Step Act does not apply retroactively. *See e.g., United States v. Clausen*, No. CR 00-291-2, 2020 WL 4260795, at *7 (E.D. Pa. July 24, 2020); *United States v. Ezell*, 518 F. Supp. 3d 851, 858 (E.D. Pa. 2021); *United States v. Pollard*, No. CR 10-633-1, 2020 WL 4674126, at *6 (E.D. Pa. Aug. 12, 2020). In *Andrews*, however, the Third Circuit closed that door to defendants too.

The Third Circuit stated that, "considering the length of a statutorily mandated sentence as a reason for modifying a sentence would infringe on Congress's authority to set penalties." *Andrews*, 12 F.4th 255, 261 (3d Cir. 2021). The Third Circuit determined that the defendant's 312-year sentence in *Andrews* was not extraordinary because "there is nothing extraordinary about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute." *See id.* at 260 (cleaned up).

Even though Bledsoe would not receive the same sentence today for committing the exact same crimes, the sentence imposed was, at the time, lawful. And according to the Third Circuit,

"[t]the duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance." *Id.* at 260–61.

In sum, it matters not what this Court thinks. The Third Circuit has spoken on the issue: Congress's amendment to section 924(c) cannot be applied retroactively for Bledsoe, and the length of his sentence, no matter how long, is not an extraordinary and compelling reason for early release. *See id.* at 260–62.

### b. Bledsoe has not established that he is at increased risk of becoming severely ill if he contracts COVID.

Bledsoe next argues that the possibility of contracting the Coronavirus is an extraordinary and compelling reason for his early release because of his age.

"[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). In order to establish extraordinary and compelling reasons to reduce Bledsoe's sentence for COVID related reasons, he must show that he "suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." *United States v. Wragg*, No. CR 15-398, 2020 WL 4015204, at *7 (E.D. Pa. July 16, 2020), appeal dismissed sub nom. No. 20-2566, 2020 WL 8373384 (3d Cir. Nov. 17, 2020) (quoting *United States v. Somerville*, No. 12-225, 2020 WL 2781585, at *7, 2020 U.S. Dist. LEXIS 93935, at *18 (W.D. Pa May 29, 2020).

Here, Bledsoe does not meet his burden. He does not allege that he has any medical conditions that could increase his risk of becoming severely ill from contracting COVID. Although Bledsoe argues that his age is factor that should be considered, he is only 41. Simply put, absent a severe medical condition, Bledsoe's age is not an extraordinary and compelling reason for early release in light of the COVID pandemic. *See Clausen*, No. CR 00-291-2, 2020 WL 4260795, at *6 ("As [the defendant] is below the age of sixty-five and submits no evidence that he suffers from

other conditions making him immunocompromised, he does not qualify under this guidance as being at a greater risk of becoming severely infected by COVID-19.").

### c. Bledsoe's other proffered reasons for early release are not extraordinary and compelling.

In addition to the two major arguments addressed above, Bledsoe gives two other reasons for his early release.

First, he argues that he "originally received this stacked sentence of 25 years because he was penalized for exercising his constitutional right to trial." Mot. 2. According to Bledsoe, had "he taken a plea bargain from the Government, his sentence would have been less than 15 years." *Id*. The defendant in *United States v. Clausen* No. CR 00-291-2, 2020 WL 4260795 (E.D. Pa. July 24, 2020) made the same argument. The *Clausen* court, however, determined that the so called "trial penalty" is not an extraordinary and compelling reason to reduce a defendant's sentence. *See id.* at *7 n. 8.

This Court agrees with the *Clausen* court because defendants have no guaranteed right to receive a plea bargain tailored to their desires. In fact, defendants have no right to a plea bargain at all. *See Lafler v. Cooper*, 566 U.S. 156, 168 (2012) ("defendants have no right to be offered a plea" (cleaned up)). And so long as a prosecutor "has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *United States v. Moscony*, 927 F.2d 742, 755 (3d Cir. 1991) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).

Bledsoe's rights were not violated when he did not receive the plea bargain he wanted. He exercised his right to a jury trial, and the prosecutor acted within his discretion by bringing the charges that Bledsoe was found guilty of committing. In addition, Bledsoe "presented no facts

showing that prosecutors abused their discretion" in his case. *Andrews*, 12 F.4th 255, 262 (3d Cir. 2021).

Second, Bledsoe argues that his sentence should be reduced because he "has done an extraordinary job in rehabilitating himself." Mot. 22. However, this type of behavior is not extraordinary. *See United States v. Claude*, 504 F. Supp. 3d 460, 462 (E.D. Pa. 2020), aff'd, 16 F.4th 422 (3d Cir. 2021) (explaining that "extraordinary" is something beyond "what is usual, customary, regular or common"). The Court acknowledges Bledsoe for his rehabilitation, but that is precisely what is expected of him. So, it does not warrant an early release.

In sum, Bledsoe's other reasons for early release are not extraordinary and compelling, even when considered together. Since Bledsoe has not established any extraordinary and compelling reasons for reducing his sentence, the Court does not analyze the factors under section 3553(a) or whether Bledsoe poses a danger to the safety of any other person or to the community.

## V.  CONCLUSION

The amendment of sentencing stacking in section 924(c) cannot be applied retroactively for Bledsoe, and the length of his lawfully imposed sentence is not an extraordinary and compelling reason for his early release as a matter of law. In addition, he has not shown that he suffers from serious medical conditions that would increase his risk of becoming seriously ill from COVID. Nor has he shown any other extraordinary and compelling reason to reduce his sentence. For these reasons, the Court denies his motion for compassionate release.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge